UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILDFLOWER + CO., INC.,                :

                                  :

                 Plaintiff,             :         <u>OPINION & ORDER</u>

                                    :

         -v.-                          :         20 Civ. 4577 (VSB) (GWG)

                                    :

MOOD APPAREL, LTD. d/b/a MOOD FABRICS,         

                                    :

                Defendant.       :
------------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Wildflower + Co., Inc. ("Wildflower") brings this action against Mood Apparel, Ltd.

d/b/a Mood Fabrics ("Mood") alleging copyright infringement and removal of copyright

management information ("CMI") under 17 U.S.C. § 1202(b).  The Clerk of the Court has

entered a default against Mood.  Mood now seeks to vacate the entry of default under Rule 55(c)

of the Federal Rules of Civil Procedure.[1]

      For the reasons set forth below, Mood's motion is granted.[2]

---

[1]  Notice of Motion to Vacate Entry of Default, filed December 4, 2020 (Docket # 31) ("Notice of Motion"); Memorandum of Law in Opposition to Motion to Vacate Entry of Default, filed December 21, 2020 (Docket # 35) ("Pl. Opp."); Declaration of Andrew Gerber in Opposition to Motion to Vacate Entry of Default, filed December 21, 2020 (Docket # 36) ("Gerber Decl."); Reply Memorandum of Law in Support of Motion to Vacate Entry of Default, filed December 28, 2020 (Docket # 37) ("Def. Reply Mem.").

[2]  A motion to set aside an entry of default is subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A).  See, e.g., Johnson v. New York Univ., 324 F.R.D. 65, 67 n.2 (S.D.N.Y. 2018), aff'd, 800 F. App'x 18 (2d Cir. 2020).

I. <u>BACKGROUND</u>

Mood "is a fabric company based in New York, New York."  Declaration of Eric Sauma in Support of Motion to Vacate Entry of Default ¶ 2, annexed to Notice of Motion ("Sauma Decl.").  "Wildflower is an independent design company based in Brooklyn, New York."  Complaint ¶ 14, filed June 15, 2020 (Docket # 1) ("Comp.").  In August 2017 Wildflower "learned that [Mood] was promoting and selling nearly identical infringing copies of [Wildflower's] popular, original Blue Feather and Hamsa patches."  Gerber Decl. ¶ 2.  On August 16, 2017, counsel for Wildflower emailed Mood's Corporate Vice President, Eric Sauma, a demand letter alleging copyright issues for these two patches.  Gerber Decl. ¶¶ 2-3; Sauma Decl. ¶ 24. [3]  On August 23 and 24, 2017, Sauma and counsel for Wildflower exchanged emails regarding Wildflower's claim with Sauma also attempting to contact Wildflower directly.  Gerber Decl. ¶¶ 4-11.  In these emails, Sauma stated (allegedly falsely) that the allegedly infringing patches had been removed from Mood's website.  <u>Id.</u> ¶¶ 4-5.  Wildflower took no further action until almost three years later when it filed the instant litigation.  <u>See id.</u> ¶ 13.

The complaint in this case was filed on June 15, 2020.  <u>See</u> Comp.  The complaint alleges Mood infringed on Wildflower's copyright for the Blue Feather and Hamsa patches originally at issue in Wildflower's 2017 demand letter, <u>id.</u> ¶¶ 20-21, 23, 25, 31-39, as well as two additional patches, identified as Champagne Bottle and Unicorn, <u>id.</u> ¶¶ 24-25, 31-39.  The complaint also alleges Mood removed Wildflower's CMI from the patches in violation of 17 U.S.C. § 1202(b).  <u>Id.</u> ¶¶ 41-48.

---

[3]  Wildflower identifies Sauma as the "principal and CEO of" Mood.  Gerber Decl. ¶ 3.  However Sauma's declaration states that his title is "Corporate Vice President of Mood[,]"  Sauma Decl. ¶ 1.  Mood's filing with the New York Secretary of State identifies "Canit Sauma" as Mood's Chief Executive Officer, <u>see</u> Order at 2, entered November 12, 2020 (Docket # 23) ("Default Order").

Mood was served on June 24, 2020 through the New York Secretary of State.  Summons Returned Executed, filed June 25, 2020 (Docket # 8).  Mood did not respond, and Wildflower obtained a certificate of default on September 14, 2020.  (Docket # 14).  Prior to obtaining the certificate of default, on July 19, 2020, counsel for Wildflower responded to the 2017 email chain attaching the complaint in this action and notifying "Mr. Sauma that [Wildflower] ha[d] filed an action against Mood Fabrics and that Mood Fabrics had been duly served and failed to respond."  Gerber Decl. ¶ 20.  Sauma has now acknowledged that he received this email, Sauma Decl. ¶ 21, but claims he "overlooked" it because his "attention and resources were entirely focused on [his] business' efforts to survive the Covid-19 pandemic[,]" id. ¶ 22.  Sauma asserts that Mood had closed its "New York business office" on March 16, 2020, Sauma Decl. ¶ 11, and "furloughed the majority of its employees," id. ¶ 12.  Mood also "diverted its business resources primarily to cutting and donating masks for use during the COVID-19 pandemic."  Id. ¶ 13.

Wildflower filed a proposed order to show cause and a proposed default judgment pursuant to Fed. R. Civ. P. 55(b)(2) on October 19, 2020.  (Docket ## 16, 18).  Judge Broderick issued an order to show cause on November 1, 2020.  (Docket # 19).  Wildflower filed an affidavit of service reflecting that the order was served on Mood through the New York Secretary of State.  See Affidavit of Service, filed November 4, 2020 (Docket # 20).  We note that it is not certain that the Secretary of State would have forwarded the court's order to Mood because the statute under which the Secretary of State undertakes such forwarding, N.Y. Bus. Corp. Law § 306(b)(1), mandates that the Secretary of State forward to a corporation only "process" that is served on it, not a court order or any other document.

In any event, Mood did not respond.  On November 12, 2020 Judge Broderick ordered that a default be entered against Mood on the issue of liability (Docket # 21) and referred the case to the undersigned for an inquest to determine damages (Docket # 22).

That same day, this Court issued an Order requiring Wildflower to take additional steps to ensure Mood was aware it was in default, including mailing a copy of the Order to Mood's California and New York addresses, mailing a copy to Mood's recent legal counsel in an unrelated matter in the Western District of New York, as well as to the attorney listed for Mood in a 2015 application to the U.S. Patent and Trademark Office, and emailing the order to both Mood and its former counsel.  See Default Order at 2-3.  Wildflower executed these steps on November 16, 2020, see Compliance Letter, filed November 18, 2020 (Docket # 24), and less than a week later, on November 18, 2020, counsel for Mood filed notices of appearance (Docket ## 25-26).  The instant motion followed.

## II.  LAW GOVERNING MOTIONS TO VACATE AN ENTRY OF DEFAULT

Rule 55(a) of the Federal Rules of Civil Procedure requires judgment to be entered by the clerk when "a party against whom a judgment . . . is sought has failed to plead or otherwise defend[.]"  Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  See also Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).  Here, a default was entered against Mood but no judgment has been entered.  See (Docket # 21).  We therefore apply Rule 55(c)'s good cause standard instead of the more stringent standard for setting aside a default judgment under Rule 60(b).

The Second Circuit has established three criteria for courts to assess in determining whether to vacate an entry of default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is

presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Also, courts may consider "[o]ther relevant equitable factors" such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id. (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).

"The determination of whether to set aside a default is left to the 'sound discretion of the judge, the person most familiar with the circumstances of the given case and . . . in the best position to evaluate the good faith and credibility of the parties.'" Sea Hope Navigation Inc. v. Novel Commodities SA, 978 F. Supp. 2d 333, 337 (S.D.N.Y. 2013) (alteration in original) (quoting Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991)). This determination must take into account the Second Circuit's "strong preference for resolving disputes on the merits." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (punctuation omitted). "[W]hen doubt exists as to whether a default should be . . . vacated, the doubt should be resolved in favor of the defaulting party." Enron, 10 F.3d at 96.

## III. DISCUSSION

### A. Willfulness

Willfulness in the context of a motion to vacate a default "refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained." Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (punctuation omitted) (quoting SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). To find willfulness, a court need not conclude that the defendant acted in bad faith as "it is sufficient to conclude that the defendant defaulted deliberately." Id. at 187 (punctuation omitted). Courts in this Circuit also consider "whether the

defendant moved promptly to vacate the default upon notice of the judgment, . . . whether the defendant had actual notice of the action, and whether the defendant knew that the plaintiff had a claim against them." Durso v. Modern Food Center, Inc., 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019) (punctuation omitted).

During June and most of July of 2020, at the time Mood was served with the complaint through the Secretary of State, Mood's New York business office was closed due to the COVID-19 pandemic. See Sauma Decl. ¶¶ 9-11, 18, 32. Mood's office was only partially reopened "[o]n or around July 20, 2020," id. ¶ 18, and "there was a significant backlog of mail and invoices to sort through" with "vendor invoices and payments [being] prioritized[,]" id. ¶ 19. Sauma acknowledges he received an email from counsel for Wildflower "[o]n or around July 19, 2020" attaching a copy of the complaint in this action, id. ¶ 21, but "overlooked the email . . . since [his] attention and resources were entirely focused on [Mood's] efforts to survive the Covid-19 pandemic[,]" id. ¶ 22.

Wildflower argues Mood's conduct was willful for a number of reasons — including that it had had previous contact with Sauma regarding the alleged copyright infringement in 2017, that Mood allegedly removed infringing items from its website a few days after it likely received service, that Mood's website suggests it had reopened in June, not July, and that Sauma admitted receiving the email in July 2020 notifying him of the complaint in this action. See Pl. Opp. at 6-11.

As for the emails exchanged by the parties in 2017, Wildflower uses these emails to argue that Sauma "believed this matter to be not worth his time and not worth responding to."

Pl. Opp. at 9.[4]  This argument is unconvincing inasmuch as Sauma was under no obligation to
answer Wildflower's emails in 2017.   At best, they provide evidence that Mood had some notice
Wildflower may have a claim against it — a point that Sauma concedes.  See Sauma Decl. ¶ 24
("Indeed, Wildflower's counsel had previously contacted me . . . concerning alleged copyright
issues."); see generally Vertamedia Grp., Inc. v. Patient Conversation Media, Inc., 2016 WL
7441643, at *3 (E.D.N.Y. Dec. 27, 2016) (finding relevant to its determination of whether to
vacate default that defendant "knew, or should have known, that its continued refusal to pay"
plaintiff "would result in a lawsuit").   Nonetheless, the evidentiary value of the 2017 emails is
undermined given the almost three-year lapse between the emails and Wildflower's filing of the
instant complaint.

Turning to Wildflower's argument that Mood's default was willful because it received
the complaint in early July 2020 when it was mailed by the Secretary of State, Wildflower bases
its argument on two pieces of evidence: (1) a screenshot from the internet archive service, the
"Wayback Machine," of Mood's website on June 24, 2020 saying that its stores in New York
and Los Angeles were open, see Wayback Machine Screenshot, annexed as Exhibit 8 to Gerber
Decl.; and (2) that Mood removed infringing content between July 1 and July 5, a time period
during which Wildflower estimates Mood would have received the notice of service from the
New York Secretary of State, see Gerber Decl. ¶¶ 16-18.  See Pl. Opp. at 9-11.  Mood does not
explicitly address the Wayback Machine screenshot but Sauma asserts that its New York
business office was closed until around July 20, 2020.  See Sauma Decl. ¶ 18.  Mood does not

---

[4]  Mood challenges the admissibility of these emails under Federal Rule of Evidence 408.
Def. Reply Mem. at 3.  We reject this challenge because they are not offered to "prove or
disprove the validity or amount of a disputed claim" and we do not consider them to the extent
they were submitted for impeachment purposes.  See Fed. R. Evid. 408(a)(2).

deny that its stores (as opposed to its business office) were open before that.  Thus, there is

arguably no inconsistency there.  As to the alleged removal of the infringing content in early

July, Mood inexplicably fails to address this contention and thus does not deny that the removal

occurred.[5]  It also provides no explanation for the removal.  The failure to address this evidence

strongly suggests that Mood has something to hide and thus that it in fact became aware of the

complaint during this time period.

Turning next to Sauma's receipt of the complaint in July 2020, "[c]ourts have . . . held a

default to be willful when a defendant knew about the complaint and failed to respond."

Artmatic USA Cosmetics v. Maybelline Co., 906 F. Supp. 850, 855 (E.D.N.Y. 1995) (citing

Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir. 1984)); accord Arbitron, Inc. v. Marathon

Media, LLC, 2008 WL 892366, at *5 (S.D.N.Y. Apr. 1, 2008) (Defendants' default found to be

willful where "two senior corporate officers had actual notice of the suit" as well as the "request

for the clerk to enter default" but did nothing to respond).  That is precisely what occurred here.

In an apparent effort to mitigate his failure, Sauma gives evidence that Mood's New York

business office was closed during most of July, that once the offices were open there was a

backlog of mail, and that he was consumed with Mood's COVID-19 response.  See Sauma Decl.

¶¶ 9-12, 18-22.  But Sauma is once again inexplicably chary with the critical explanations.  Most

significantly, he never states whether anything in the mail arrived containing the complaint, or

---

[5]  Mood does refute Wildflower's argument that it failed to remove the Blue Feather and
Hamsa patches after receiving Wildflower's demand letter in 2017.  See Def. Reply Mem. at 3-4.
Mood argues it is "wrong for Wildflower to state . . . that [Mood] did not take down the
infringing patches from its website," id. at 3 (punctuation omitted), and that Mood did "remove[]"
the allegedly infringing patches from circulation after receiving Wildflower's demand[,]" id. at
4.

whether the complaint was eventually found in the backlog of mail.  Once again, this suggests that Mood is deliberately not providing explanations of facts that would be harmful to its case.

Sauma admits that he received an email from Wildflower's counsel informing him of the lawsuit and attaching the complaint "[o]n or around July 19, 2020[.]"  Sauma Decl. ¶ 21.  He states he "overlooked the email" because "my attention and resources were entirely focused on my business' efforts to survive the Covid-19 pandemic."  Id. ¶ 22.  Certainly, the exigencies of the COVID-19 pandemic may excuse a party's default under the right circumstances.  See Scalia v. APS Market and Grill, LLC, 2020 WL 4284943, at *3 (D. Del. July 27, 2020) ("While Defendants neglected their duty to respond, their excuse of preoccupation with the COVID-19 pandemic is plausible."); Oppenheimer v. City of Madeira, Ohio, 336 F.R.D. 559, 565 (S.D. Ohio 2020) (Court found that because "the default [was] a result of unprecedented circumstances rising from the COVID-19 pandemic[,]" it was not willful).  We are troubled in this case, however, by the lack of forthright explanations as to the matters we just discussed which causes us to be reluctant to accept the explanation that the pandemic is the true explanation for Sauma's failure to act.

In the end, it is unnecessary for us to determine definitively whether Mood's conduct is egregious enough to make Mood's default willful.  We will assume arguendo that Mood acted willfully because, as explained below, the other factors weigh in favor of vacatur of the default.

B.  Prejudice

In determining whether setting the default aside will prejudice the plaintiff, it is not enough to show "delay alone[.]"  Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983).  Rather, courts must also "consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy, resulting in the loss of evidence, creating increased

difficulties of discovery, or providing greater opportunity for fraud and collusion[.]"  Swarna v.
Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010) (punctuation omitted).  Wildflower's only
substantive argument regarding prejudice does not, however, relate to the effect of the delay.
Rather, Wildflower argues that it "would be significantly prejudiced by having to deal with an
'adversary that has proven itself to be particularly evasive and uncooperative[,]'" Pl. Opp. at 21,
citing a case that referred to this circumstance in denying a motion to vacate a default judgment,
see Francis v. Ideal Masonry, Inc., 2020 WL 6737463, at *6 (E.D.N.Y. Nov 17, 2020).
Notwithstanding this statement in Francis (which is unsupported by any citation), we question
whether the predicted nature of an opponent's future litigation conduct is relevant to the
prejudice analysis.  In any event, we do not believe that it applies here.  Mood acted with a
reasonable degree of responsiveness once it was served with the papers regarding the inquest.
Additionally, the delay in Francis between the entry of the default judgment and the motion to
vacate was just short of a year.  See id. at *2.  Here, the delay between the entry of default and
Mood's request to bring a motion to vacate was only about two months.

In sum, we find that there will be no prejudice to Wildflower if the default is vacated.
This factor strongly favors vacatur of the default.

C.  Meritorious Defense

"'In order to make a sufficient showing of a meritorious defense, the defendant need not
establish his defense conclusively, but he must present evidence of facts that, if proven at trial,
would constitute a complete defense.'"  Oscilloscope Pictures, Inc. v. Monbo, 2019 WL
2435644, at *7 (E.D.N.Y. Mar. 25, 2019) (alteration omitted) (quoting Green 420 F.3d at 109).
Importantly,

> "[t]he defaulting defendant 'need only meet a low threshold to satisfy this
> factor.'"  Gench v. HostGator.com LLC, 2015 WL 3757120, at *5 (S.D.N.Y. June

17, 2015) (quoting <u>MD Produce Corp. v. 231 Food Corp.</u>, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); <u>see also</u> <u>Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.</u>, 92 F.3d 57, 61 (2d Cir. 1996) (defense "need not be ultimately persuasive at this stage" to satisfy this factor).  Nonetheless, a defendant must still "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations.'"  <u>FedEx TechConnect, Inc. v. OTI, Inc.</u>, 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013) (quoting <u>Salomon v. 1498 Third Realty Corp.</u>, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)).

<u>Johnson v. New York Univ.</u>, 324 F.R.D. 65, 72 (S.D.N.Y. 2018), <u>aff'd</u>, 800 F. App'x 18 (2d Cir. 2020).

    While the issue is not clearly settled, it appears to the Court that a party seeking to vacate a default need only establish a defense to at least one claim — not every claim pled in the complaint — at least where the claims would allow for independent awards of damages.  If the rule were otherwise, a party who could show a complete defense to only one of two claims, and who is deserving of relief from default, would become liable for that claim merely because it had no defense to the other claim.  <u>See</u> <u>Ostrolenk Faber LLP v. Lagassey</u>, 2019 WL 2433887, at *2 (S.D.N.Y. June 11, 2019) (defendant had proffered "meritorious legal defenses to one or more of [plaintiff's] claims"); <u>Fischer v. Forrest</u>, 2014 WL 2717937, at *4 (S.D.N.Y. June 16, 2014) (Defendant "has potentially meritorious legal defenses to one or more of [plaintiff's] claims"). We are aware that <u>U.S. v. Goldstein</u>, 2005 WL 323740 (S.D.N.Y. Feb. 9, 2005), held that the moving party must set forth a meritorious defense "as to each cause of action in the complaint." <u>Id.</u> at *2.  We respectfully disagree with <u>Goldstein</u>, however, to the extent it requires the showing of a defense to all claims where independent damages flow from the various claims pled.  It appears <u>Goldstein</u>'s statement derives largely from <u>Enron</u>'s formulation that a party moving to vacate a default must show a "complete" defense.  10 F.3d at 98.  <u>Enron</u>, however, did not address the question of whether a defense was required as to all rather than some claims and it

thus makes more sense to interpret "complete" defense to mean a defense that completely

negates any claim in the complaint.[6]  And, of course, <u>Enron</u> expresses a "preference for resolving

disputes on the merits."  10 F.3d at 95.  Additionally, the Second Circuit has held that "[a]

defense is meritorious if it is good at law so as to give the factfinder some determination to

make."  <u>Am. Alliance Ins. Co.</u>, 92 F.3d at 61 (punctuation omitted).  As long as the defendant

has a meritorious defense for one of the plaintiff's claims, and that claim is independent of any

other claim in the case, the factfinder will have some determination to make.

Mood argues that it has meritorious defenses both to the copyright infringement claim

and the claim for removal of CMI.  <u>See</u> Memorandum of Law in Support of Motion to Vacate

Entry of Default at 9-15, annexed to Notice of Motion ("Def. Mem.").  While we find many of

these defenses questionable, there is at least one that if proven would provide a complete defense

to one of Wildflower's claims.

"In a copyright infringement case, the plaintiff must show: (i) ownership of a valid

copyright; and (ii) unauthorized copying of the copyrighted work."  <u>Jorgensen v. Epic/Sony</u>

<u>Records</u>, 351 F.3d 46, 51 (2d Cir. 2003) (citing <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499

U.S. 340, 361 (1991) and <u>Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.</u>, 150 F.3d 132,

137 (2d Cir. 1998)).  While a "certification of registration . . . constitute[s] prima facie evidence

of the validity of the copyright," 17 U.S.C. § 410(c), even where a plaintiff claims to have

registered the copyright, as Wildflower alleges here, <u>see</u> Comp. ¶ 11, a defendant "may rebut

[this] presumption" by showing the work is not original, <u>Scholz Design, Inc. v. Sard Custom</u>

---

[6]  <u>Goldstein</u>  also cited to <u>SEC v. McNulty</u>, 137 F.3d 732 (2d Cir. 1998).  We do not view
<u>McNulty</u> as supporting the rule in <u>Goldstein</u> inasmuch as <u>McNulty</u> ultimately found that the
defendant had failed to establish a meritorious defense as to either of the claims against him.  <u>Id.</u>
at 740-41.

Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).  A work is original if it is "independently

created . . . and possess[es] 'at least some minimal degree of creativity.'"  Id. (quoting Feist

Publ'ns, Inc., 499 U.S. at 345).

Mood asserts that "Wildflower's claims are barred because the patch designs are not

works of original expression and are generic and in the public domain."  Def. Mem. at 11; see

also Sauma Decl. ¶ 34 (attesting to the validity of the claimed defenses).  Indeed, "familiar

symbols or designs" are not eligible for copyright protection.  37 C.F.R. § 202.1(a).  The patches

at issue consist of a unicorn, a champagne bottle, a Hamsa, and a blue feather.  See Comp. ¶ 2

(displaying the four patches).  While the level of creativity necessary to qualify as an original

work is "extremely low[,]" Feist Publ'ns, Inc., 499 U.S. at 345, we cannot at this stage reject

Mood's claim that Wildflower's designs are not works of original expression.  Should Mood

prove the minimum level of creativity is not met, Mood would rebut the presumption of validity

afforded to Wildflower's copyrights and have a complete defense to Wildflower's copyright

infringement claim.

D.  Weighing the Factors

"[B]ecause defaults are generally disfavored and are reserved for rare occasions, when

doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in

favor of the defaulting party."  Enron, 10 F.3d at 96.  Despite our assumption that Mood's

default was willful, which favors denying the motion to vacate, the other factors ultimately

weigh in favor of setting aside the default.  The prejudice factor is especially strong in light of

the short period of time between the entry of default and Wildflower's motion to vacate.  Setting

aside the default is in keeping with the Second Circuit's strong preference for deciding cases on

the merits.  See Green, 420 F.3d at 104.  "This result is particularly warranted given that we are

13

considering the vacatur of an entry of default, rather than of a default judgment" and Fed. R. Civ.

P. 55(c) requires only a finding of "good cause" to set aside an entry of default.  Gench v.

HostGator.com LLC, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015).  We therefore

conclude that vacatur of the default is appropriate.  See Puddu v. 6D Global Technologies, Inc.,

2020 WL 2833852, at *5 (S.D.N.Y. May 31, 2020) ("Though the Court ultimately concluded . . .

that [defendant's] default was not willful, a contrary conclusion would not alter the balance of

the factors, which would still weigh in favor of vacating the default.") (emphasis in original);

Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC, 2019 WL 1099944, at *4 (S.D.N.Y.

Mar. 8, 2019) (Granting a motion to set aside the clerk's entry of default despite finding the

"Defendant's default was willful" and that Defendant had only put forward "the bare minimum

for showing the possibility of meritorious defenses.").

IV.  CONCLUSION

    For the foregoing reasons, the default entered by the Clerk (Docket # 14) is vacated.

Mood shall file its response to the complaint within 21 days.

Dated: March 11, 2021
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge